IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-02287-CNS

JOSE ALBERTO SANCHEZ,

      Petitioner,

v.

PAM BONDI, Attorney General,
ERNESTO SANTACRUZ, U.S. ICE Field Office Director for the Colorado Field Office,
KRISTI NOEM, U.S. Secretary of Homeland Security, and
JOHNNY CHOATE, Warden of GEO Group Inc., Aurora,

      Respondents.

---

**ORDER**

---

Before the Court is Petitioner's fully briefed Amended Petition For Writ of Habeas Corpus. ECF No. 26. The Court GRANTS the petition, and in doing so presumes familiarity with this case's factual and procedural background, as well as the parties' habeas briefing.

Petitioner challenges his detention—and seeks release from it—on two primary bases: (1) the revocation of his release was "effected without compliance with applicable regulations," and (2) it is not "reasonably foreseeable that he will be removed to Mexico or any other country, in violation of due process rights [under] *Zadvydas v. Davis*, 533 U.S. 678 (2001)." ECF No. 26 at 3; *see also id.* at 5. Because the Court agrees with

1

Petitioner as to this first point, the Court need not reach the second. *See, e.g., Nguyen v. Hyde*, 788 F. Supp. 3d. 144, 152 (D. Mass. 2025).

Essentially, Petitioner argues that his due process rights were violated because the "revocation of his release" was effectuated absent compliance with certain regulations. *See, e.g., id.* at 9 (citing 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13); ECF No. 32 at 3 ("ICE did not comply with the mandatory requirements of 8 C.F.R. § 241.4(l)(1) . . . or § 241.4(l)(2) . . . . Nor did ICE comply with 8 C.F.R. § 241.13(i) . . . ."). The Court agrees. As Petitioner observes, these regulations demanded that, when re-detaining him, ICE provide Petitioner with "notice or opportunity to respond" as well as an "initial informal interview" in order to "respond to [the] stated reasons" for his detention. ECF No. 26 at 9 (citation modified). *See also* § 241.4(l)(1) ("Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.") However, as the declaration of Gary Zolock, submitted with Respondents' answer, shows, Petitioner received no such interview:

> On July 7, 2025, Petitioner was identified as having a final order of removal and taken into ICE custody at a check-in to pursue removal to a third country.
>
> In the ordinary course of agency practice, when an alien is taken into ICE custody, an ICE officer will explain the basis for revoking conditional release, explain the basis for the detention, check the alien's biometrics, answer questions posed by the alien, provide the alien with the opportunity to make a free telephone call to his family, and provide copies of relevant documents, such as the arrest warrant, departure warning, and pro bono list.

> ICE records indicate that when Petitioner was taken into custody, ICE officials *went over with him* his country of citizenship, his nationality, how he entered the United States, his criminal history, whether he had any active warrants, his military service (if any), and his family ties and connections to the United States. *He was advised of his right to speak with the consulate of his country of citizenship and afforded an opportunity to do so*. *He was also provided a pro bono list of free or low-cost attorneys and he represented that he is in good health*. *ICE officials further provided Petitioner with a detainee handbook*, ensured that Petitioner has no outstanding approved applications or petitions for relief from removal, and in-processed Petitioner as an alien subject to a final order of removal for detention pending removal.

ECF No. 31-1 at 7 (citation modified).

This process is inadequate and certainly does not satisfy § 241.4(l)(1). Simply stated, reviewing Petitioner's nationality and criminal history, advising him of his right to speak with his consulate, giving him a pro bono attorney list and a handbook, and checking in on his health hardly rise to the level of an interview—even an informal one—where Petitioner was given notice of the reasons for his detention and an opportunity to respond to those reasons, which should have also been provided in a notification. *Compare* ECF No. 31-1 at 7, *with* § 241.4(l)(1). And even considering the subsequent "Notice to Alien of File Custody Review," ECF No. 31-1 at 8, that Mr. Zolock represents was provided to Petitioner on August 6, 2025, Mr. Zolock and Respondents still provide no indication that Petitioner was given any opportunity to respond to such a notice, including in an interview setting as prescribed by regulation. *Cf.* § 241.4(l)(1); § 241.13(i); ECF No. 32 at 3 ("These are mandatory procedures, not optional guidelines.").

Indeed, the gravamen of Respondents' argument in response to Petitioner's due process challenge is that Petitioner is "not entitled to immediate relief based on claimed

deficiencies in the process by which ICE re-detained him." ECF No. 31 at 8 (citation

modified). In other words, Respondents challenge the *remedy* Petitioner seeks based on

ICE's regulatory non-compliance, rather than the fundamental failure to comply with

governing regulations and provide adequate process in the first instance. *See also id.*

("Even if established, such violations would not warrant immediate release . . . . The

proper remedy for lack of procedural due process . . . should be additional process, not

immediate release."). Thus, the nature of Respondents' argument bolsters the Court's

conclusion that Petitioner was not afforded adequate process when he was re-detained.

Contrary to Respondents' suggestion, *see id.* at 9, caselaw supports the Court's

conclusion. At bottom, "[b]ecause ICE violated its own regulations when it detained

[Petitioner] without notifying him of the reasons why he was being detained, [Petitioner]

is entitled to habeas relief." *Roble v. Bondi*, Case No. 25–cv–3196 (LMP/LIB), --- F. Supp.

3d ----, 2025 WL 2443453, at *3 (D. Minn. Aug. 25, 2025). *See also Nguyen*, 788 F. Supp.

3d at 152–53 ("Based on ICE's violations of its own regulations, I conclude that Mr.

Nguyen's detention is unlawful and that his release is appropriate."). *Cf. Bahadorani v.*

*Bondi*, No. CIV–25–1091–PRW, 2025 WL 3048932, at *4 (W.D. Okla. Oct. 31, 2025)

("Petitioner has failed to show that the appropriate remedy for ICE's regulatory violations

is a writ of habeas corpus. There is no relief that this Court could offer, since Petitioner

has now *been adequately provided notice* as to the reason for his revocation and

detention, he has been *provided a forum to rebut the reasons* for his detention, and it is still the case that Petitioner is statutorily removable." (emphasis added)).[*]

Accordingly, granting the petition is proper. *See, e.g., Sarail A.,* 2025 WL 2533673, at *2 ("Under 28 U.S.C. § 2241, federal courts have jurisdiction to order the release of a prisoner who 'is in custody in violation of the Constitution or laws or treaties of the United States.' This authority includes the release of detained noncitizens when ICE fails to follow its own regulations." (citation modified)); *Hamidi v. Bondi*, Case No. CIV–25–1205–G, 2025 WL 3452454, at *4 (W.D. Okla. Dec. 1, 2025) ("Because Petitioner has shown that he is in custody in violation of the laws of the United States, he is entitled to habeas relief." (citation modified)); *Roble*, 2025 WL 2443453, at *5 ("The Court will thus follow the approach of other courts facing similar cases and order Roble's release from custody as a remedy for ICE's illegal re-detention of Roble."); *Nguyen*, 788 F. Supp. 3d at 152 ("[W]here an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and ICE fails to adhere to it, the challenged [action] is invalid." (citation modified)).

\* \* \*

---

[*] Respondents argue that Petitioner must show prejudice in addition to showing that his due process rights were violated. *See* ECF No. 31 at 10. Cases confronting substantially similar regulatory violations and granting substantially similar—if not identical—relief have not imposed such a requirement, and Respondents fail to persuade that doing so is proper in a case such as this, premised on the straightforward failure to adhere to an unambiguous regulatory requirement. *See, e.g., Sarail A. v. Bondi*, File No. 25–cv–2144 (ECT/JFD), --- F. Supp. 3d ----, 2025 WL 2533673, at *2 (D. Minn. Sept. 3, 2025) ("Agencies must follow their own regulations." (citation modified)); Nguyen, 788 F. Supp. 3d at 152 ("[W]here an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and ICE fails to adhere to it, the challenged [action] is invalid." (citation modified)). Regardless, failure to receive mandatory process is clearly prejudicial.

Consistent with the above analysis, Petitioner's Amended Petition For Writ of Habeas Corpus, ECF No. 26, is GRANTED. Respondents are directed to immediately release Petitioner Jose Alberto Sanchez subject to the terms of his Order of Supervision. Respondents SHALL SUBMIT a declaration pursuant to 28 U.S.C. § 1746 within three (3) days of this Order affirming Petitioner's release from custody.

DATED this 4th day of December 2025.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge